**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BOBBY GILBERT,                                           Case No. 1:18-cv-653

        Plaintiff,                                  Dlott, J.
                                                           Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Bobby Gilbert filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) in December 2014, alleging disability beginning in September 2014 due to physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On May 8, 2017, ALJ Christopher Tindale held an evidentiary hearing at which Plaintiff appeared with a non-attorney representative Mario Davila. The ALJ also heard testimony from impartial vocational expert William Kiger. On November 21, 2017, the ALJ denied Plaintiff's application in a written decision. (Tr. 12-32).

1

Plaintiff was born on May 5, 1975 (Tr. 30) and was 39 years old on his onset of disability. He has a high school education. (Tr. 30). His past relevant work was as a fast food worker, a warehouse worker, and a store clerk. (Tr. 30). He alleges disability based on physical and mental impairments.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: disorders of the spine, obesity, carpal tunnel syndrome, asthma, atrial fibrillation, hypogonadism, a mood disorder, an anxiety disorder, and a personality disorder. (Tr. 15). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work as follows:

> He can never climb ramps, stairs, ladders, ropes, or scaffold. He can occasionally kneel, crouch, stoop, and crawl. He can frequently handle, finger, and operate hand controls with the right upper extremity. He must avoid all exposure to hazards such as unprotected heights, operating dangerous machinery, and commercial driving. He must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation. He must be allowed to use handheld assistive device for ambulation, and the contralateral upper extremity can be used to lift and carry up to the exertional limits. He must be allowed to alternate between sitting and standing for brief periods every 30 minutes while remaining at the workstation, and would not be off task more than 5% of the work period. He is limited to simple, routine tasks consistent with the unskilled work in a work environment free of fast production rate or pace work. He can have no contact with the public, and only occasional and superficial contact with co-workers, with superficial contact defined as to tandem tasks. He must work in a low stress environment defined as having only occasional changes in the work setting and only occasional decision-making required.

(Tr. 18). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

2

concluded that Plaintiff is unable to perform any past relevant work. (Tr. 30). Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as inspector/tester/sorter and operator/tender/feeder. (Tr. 31). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating the medical evidence of record; and; 2) failing to include all of Plaintiff' limitations in his hypothetical question to the VE. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

economy. See Combs v. Commissioner of Soc. Sec., 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Evaluation of Opinion evidence*

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence. Notably, the ALJ afforded "little weight" to the treating physician opinions of Drs. Fernandez, Cerullo, and Tayeb, while granting "some weight" to the non-treating, nonexamining opinions of the State agency medical consultants and the opinion of examining physician Dr. Aina. (Tr. 24-25). Mr. Gilbert submits that the ALJ's decision to grant "little weight" to the treating physicians' opinions of record is not supported by substantial evidence.

The record contains the following relevant evidence:

*Dr. Tayeb*

Mr. Gilbert saw Dr. Tayeb on January 20, 2014, reporting low back pain that radiated into his right leg with numbness and tingling (Tr. 455). Dr. Tayeb assessed post-laminectomy syndrome of the lumbar spine and thoracic or lumbosacral radiculitis. (Tr. 455). Mr. Gilbert's prescribed medications included Valium, Percocet, Nurontin, MS

5

Contin, and Methocarbamol. Mr. Gilbert followed-up with Dr. Tayeb through December 31, 2014. (Tr. 461-574, 904-906). On May 19, 2014, Dr. Tayeb noted that on examination Mr. Gilbert demonstrated decreased strength in his right hand, and decreased sensation and decreased range of motion of the lumbar spine. (Tr. 480). Dr. Tayeb added the diagnoses of unspecified arthropathy, non- organic sleep disorder, idiopathic peripheral autonomic neuropathy, and myalgia and myositis. Dr. Tayeb continued Mr. Gilbert on his medications. (Tr. 480).

Mr. Gilbert continued following-up with Dr. Tayeb from January 8, 2015, through May 9, 2017. (Tr. 592-629, 1001-1009, 1157-1239, 1164-1239). A lumbar CT scan ordered by Dr. Tayeb showed mild multilevel degenerative disc disease and degenerative facet changes with minimal central canal stenosis on April 3, 2015. (Tr. 628-629). On May 24 and June 14, 2016, Dr. Tayeb injected Mr. Gilbert's right knee. (Tr. 1219, 1228). Dr. Tayeb administered a trigger point injection on November 28, 2016, and SI joint injections. In a letter dated October 23, 2015, Dr. Tayeb wrote that he had treated Mr. Gilbert for a variety of chronic neuro-musculature and orthopedic complaints with conservative and invasive therapeutic modalities. (Tr. 1002). Dr. Tayeb noted that Mr. Gilbert had impaired ability to grasp, squeeze, carry, and finely manipulate objects. Dr. Tayeb also noted that Mr. Gilbert required the assistance of a cane or walker to ambulate adequately. (Tr. 1002).

Dr. Tayeb reported that multiple diagnostic imaging procedures were consistent with moderate to severe right median neuropathy of the right upper extremity, consistent with carpal tunnel syndrome, and multi-level post-operative spinal arthropathy with associated degenerative disc disease on May 1 and 9, 2017. (Tr. 1165, 1171, 1198). Dr.

6

Tayeb reported that Mr. Gilbert had received medial branch blocks, transforaminal epidural injections, and radio frequency ablation. Mr. Gilbert had also received permanent implantation of a spinal cord stimulator.

In a "Disability Impairment Questionnaire" dated September 20, 2015, Dr. Tayeb reported that Mr. Gilbert could sit and stand and/or walk for 2 hours each during an 8-hour workday, lift/carry up to 10 pounds occasionally, occasionally grasp and perform fine manipulation, rarely use his arms for reaching, needed to elevate his legs while sitting, would frequently experience interference with attention and concentration during an 8-hour workday, would need to take unscheduled work breaks, and would be absent from work 2 to 3 times per month. (Tr. 1005-1009).

*Dr. Aina*

Mr. Gilbert was examined by Dr. Aina on June 9, 2015. (Tr. 768-769). Mr. Gilbert presented using a cane, and reported having a back stimulator. (Tr. 768). Mr. Gilbert reported radiating low back pain into his legs with tingling, numbness, and paresthesia. Mr. Gilbert also reported right leg pain. (Tr. 768). On examination, Dr. Aina noted that Mr. Gilbert weighed 308 pounds. Mr. Gilbert was unable to walk on toes and unable to squat. He was able to walk without a cane. Mr. Gilbert had limited range of motion of his lumbar spine. (Tr. 768-769). Dr. Aina's diagnoses were low back pain and right leg pain. Dr. Aina further reported Mr. Gilbert could lift, push, and pull 30 pounds, 20 pounds frequently, and that Mr. Gilbert's capability for prolonged sitting and standing more than 2 hours may be affected. (Tr. 769).

With respect to Plaintiff's physical RFC, the ALJ assigned some weight to the findings of Dr. Aina, noting that he examined Plaintiff on only one occasion and not in a

7

treating context. The ALJ further noted that Dr. Aina's opinion was somewhat vague and he did not have access to later evidence in Plaintiff's medical file. (Tr. 25).

*Dr. Fernandez*

In a "Mental Impairment Questionnaire" dated June 5, 2015, Dr. Fernandez reported that Mr. Gilbert had moderate to marked limitation in his mental functioning due to intermittent explosive disorder. Mr. Gilbert saw Dr. Fernandez on July 20, 2015, and Dr. Fernandez noted that Mr. Gilbert was "pissed" because he had been waiting in her office for 50 minutes. Mr. Gilbert reported a depression level of 8/10 with chronic suicidal thoughts. (Tr. 1018). On examination, Mr. Gilbert's mood was depressed and his affect irritable. (Tr. 1018). Dr. Fernandez's diagnoses were bipolar I disorder and borderline personality disorder. (Tr. 1019). Mr. Gilbert's prescribed medications were Benztropine, Trazodone, Saphris, and Lexapro major depressive disorder, and borderline personality disorder. (Tr. 697- 701). Mr. Gilbert returned to see Dr. Fernandez on September 28, 2015, reporting Saphris worked to calm his anger, but he did not feel his anger was better. He was sleeping well. Mr. Gilbert also reported his mind raced at times, and his anxiety was still there with new situations and crowds. (Tr. 1016). Dr. Fernandez continued Mr. Gilbert on his medications. (Tr. 1017).

In formulating Plaintiff's mental RFC, the ALJ assigned little weight to the assessment of Dr. Fernandez. In so concluding, the ALJ noted that Dr. Fernandez treated Plaintiff from January 2015 through May 2015. However, the ALJ found that Dr. Fernandez' "opinions are extreme and not consistent with the record…." (Tr. 26).

*Dr. Cerullo*

In association with is treatment at Access Counseling Services, Plaintiff Gilbert underwent a psychiatric evaluation by Michael A. Cerullo, M.D., on July 14, 2016. (Tr. 1055-1057). Mr. Gilbert reported being down most of the time, as well as negative thoughts, significant irritability, anger, low energy, anhedonia, and insomnia. (Tr. 1056). On examination by Dr. Cerullo, Mr. Gilbert demonstrated a sad mood and depressed affect. (Tr. 1057). Dr. Cerullo diagnosed major depressive disorder and generalized anxiety disorder, and he prescribed Latuda and Lexapro. Mr. Gilbert engaged in counseling at Access Counseling from June 22, 2016, through March 8, 2017 (Tr. 1050-1095).

Mr. Gilbert followed-up with Dr. Cerullo on September 2, 2016, reporting he was doing much better on his medications with a better mood, less anxiety, getting out more, and getting his interests back. (Tr. 1065). Dr. Cerullo increased Mr. Gilbert's Lexapro dosage, continued Latuda, and added Cogentin. On October 14, 2016, Mr. Gilbert reported to Dr. Cerullo that he was sleeping more during the day, but otherwise his mood was better. (Tr. 1074). Dr. Cerullo decreased Mr. Gilbert's Valium and Latuda dosages due to sedation. (Tr. 1074). On November 30, 2016, Dr. Cerullo noted that Mr. Gilbert was doing well with no more significant daytime sedation. His mood continued to be good. (Tr. 1082). Mr. Gilbert was continued on his medications. (Tr. 1082).

On January 27, 2017, Mr. Gilbert reported to Dr. Cerullo more irritability and trouble sleeping. (Tr. 1088). Dr. Cerullo increased Mr. Gilbert's Latuda dosage and continued his other medications. (Tr. 1089). On March 10, 2017, Dr. Cerullo noted that Mr. Gilbert was not able to tolerate the higher dosage of Latuda due to "akethesia," but

9

was doing okay on a reduced dosage with a good mood most of the time. Mr. Gilbert also reported continuing significant insomnia. (Tr. 1098). Dr. Cerullo started Mr. Gilbert on Doxepin.

In a "Mental Impairment Questionnaire" dated April 17, 2017, Dr. Cerullo reported that Mr. Gilbert had moderate to marked impairment in his mental functioning, except for mild limitation in carrying out one-to-two step instructions. (Tr. 1141-1145).

The ALJ assigned "little weight" to the assessment of Dr. Cerullo, "even though he was claimant's treating psychiatrist from July 2018 – March 2017."  (Tr. 27). The ALJ found that Dr. Cerullo's assessment "is markedly inconsistent with the objective mental medical evidence on file, especially the treatment notes from Dr. Cerullo's facility". *Id*. In this regard, the ALJ noted that in June 2016, claimant's impulse control was fair, and his thought processes were logical…. His mood was dysthymic/depressed, although his affect was broad and within normal limits. His behavior and functioning were cooperative. His cognition was within normal limited.  Judgment and insight were good. His insight remained good the next month, but his mood was sad and his affect was depressed. (Tr. 27). The ALJ further noted that the record indicated that Plaintiff's mood was euthymic in August, October and November 2016.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the

10

opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). Upon careful review and as explained below, the undersigned finds, that the ALJ's evaluation of the opinion evidence comports with Agency regulations and controlling law.

As noted by the Commissioner, the ALJ reasonably determined Plaintiff's mental RFC. He reviewed the relevant objective medical and opinion evidence and determined that while Plaintiff's mental conditions affected his work-related functioning, he was not disabled.  In reaching this determination, the ALJ properly determined that Dr. Cerullo's and Dr. Fernandez' extreme limitations were not supported by the objective evidence. In this regard, the ALJ cited Plaintiff's relevant mental health treatment history, including treatment notes documenting the following normal findings:

> 1. good, normal, or euthymic mood and normal affect, as observed by consultative psychologist Brian R. Griffiths, Psy.D.; cardiologist Vanshipal Puri, M.D.; psychiatrist Michael Cerullo, M.D.; and social worker James Canfield (Tr. 23-24, 26, 583, 980, 1062, 1065, 1071, 1074, 1077, 1082, 1098);
>
> 2. cooperative behavior, as observed by Dr. Cerullo and Mr. Canfield (Tr. 23- 24, 26, 1049, 1057, 1088);
>
> 3. good insight and judgment, as observed by Dr. Cerullo and Mr. Canfield (Tr. 23, 1049, 1057, 1065);
>
> 4. fair impulse control, as observed by Mr. Canfield (Tr. 23, 1049);
>
> 5. logical and/or goal-directed thought processes, as observed by Dr. Cerullo and Mr. Canfield (Tr. 23-24, 1049, 1088);
>
> 6. normal digit span testing (evidencing intact short term memory), as observed by Dr. Griffiths (Tr. 16, 585);
>
> 7. intact memory, as observed by staff at Cincinnati Behavioral Health (Tr. 23, 1016, 1018);

8. ability to recall three out of three objects after a time delay, as observed by Dr. Griffiths (Tr. 16, 585);

9. appropriate interaction with the examining psychologist, as observed by Dr. Griffiths (Tr. 17, 585);

10. no autonomic or motoric indications of anxiety, as observed by Dr. Griffiths (Tr. 23, 583);

11. successful performance of serial sevens and serial threes (evidencing intact attention and concentration), as observed by Dr. Griffiths (Tr. 17, 585); and

12. appropriate hygiene and attire, as observed by Dr. Cerullo; Dr. Griffiths; Dr. Aina; consultative psychiatrist Lisa Fernandez, M.D.; and neurosurgeon Tan Nichols, M.D. (Tr. 17, 346, 583, 768, 1016, 1082).

The ALJ further noted that Plaintiff's mental status examinations demonstrated benign findings such as: (1) cooperative behavior (Tr. 26, 583, 1049, 1088); (2) adequate remote recall (Tr. 26, 584); (3) normal or euthymic mood and affect (Tr. 26, 980, 1062, 1065, 1071, 1074, 1077, 1082, 1098); (4) intact memory and concentration (Tr. 26, 1018); (5) fair impulse control (Tr. 26, 1049); (6) logical thought processes (Tr. 26, 1049, 1088); (7) good insight and judgment. (Tr. 26, 1049, 1057, 1065). The ALJ also referenced Plaintiff's statements reflecting his improved mood. (Tr. 26-27, 1065, 1074). Finally, the ALJ noted that Dr. Fernandez's opinion also indicated that Plaintiff "can regain his ability to go back to the workplace once stable on pharmacotherapy" (Tr. 26, 701). The record demonstrates that Plaintiff became much more stable on his medication regime following Dr. Fernandez's June 2015 opinion. (Tr. 26)

With respect to Plaintiff's physical RFC, the ALJ also properly afforded little weight to the opinions of Dr. Tayeb. (Tr. 28-29). As noted by the Commissioner, the ALJ observed that Dr. Tayeb's extreme findings were incongruent with the record,

12

including his own treatment notes. See 20 C.F.R. § 404.1527(c)(4). In making this finding, the ALJ pointed to a wide range of evidence, including Dr. Tayeb's treatment notes which regularly documented: (1) Plaintiff's reports of significant reductions in pain due to treatment (Tr. 28, 372, 387, 477, 513, 549, 569, 592, 904, 907, 922, 952, 1167, 1172, 1207, 1210, 1221); (2) that Plaintiff exhibited no pain behaviors (Tr. 28, 388, 465, 550, 593, 905, 908, 923, 1193, 1196, 1231, 1234); (3) Plaintiff's denials of gait abnormalities (Tr. 28, 465, 549, 1200); and (4) Plaintiff's statements that his activities of daily living and mobility were improved with treatment (Tr. 28, 372, 387, 465, 904, 922, 1204, 1210, 1225, 1230, 1233). The ALJ also referenced benign findings from other providers, such as: (1) Dr. Puri's normal gross sensory and motor examination (Tr. 29, 980); (2) Dr. Aina's findings that Plaintiff had a normal gait with a cane, had stable joints, and could walk without his cane (Tr. 29, 769); and (3) Dr. Sickinger's findings that Plaintiff had good range of motion in all major joints, had no tenderness or major deformities, and retained normal motor function and sensory function. (Tr. 29, 1110). Additionally, the ALJ correctly observed that Dr. Tayeb offered no justification for his proposed limitation regarding elevation of Plaintiff's legs. (Tr. 29). See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Finally, the ALJ pointed to Plaintiff's April 2015 lower back CT demonstrating only mild or minimal abnormalities. (Tr. 28, 628-29).

     An ALJ is required to do precisely as the ALJ did here—to determine an RFC based upon the medical evidence as a whole. In fact, the ALJ alone is responsible for determining a Plaintiff's RFC. See 20 C.F.R. § 404.1546(d). There is no regulatory

requirement that an ALJ adopt every facet of a particular opinion in formulating an RFC, so long as the record supports the RFC actually determined by the ALJ, and he adequately explains his analysis in a manner sufficient to allow review. As such, an ALJ is "not required to recite the medical opinion of a physician verbatim in his RFC. *See Poe v. Com'r of Soc. Sec.*, 342 Fed.Appx. 149, 157, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009); *see also Smith v. Colvin*, 2013 WL 6504681, at *11 (N.D. Ohio, Dec. 11, 2013) ("[T]here is no requirement that an ALJ accept every facet of an opinion to which he assigns significant or substantial weight."); *Smith v. Com'r of Soc. Sec.*, 2013 WL 1150133 at *11 (N.D. Ohio, Mar. 19, 2013) (same).

Although Plaintiff may disagree with the ALJ's decision, he has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley*, 581 F.3d at 406. Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Indeed, the Sixth Circuit upholds an ALJ's decision even where substantial evidence both contradicts and supports the decision. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). For these reasons, the ALJ's decision is substantially supported in this regard and should not be disturbed.

*2. Step-Five Finding*

Plaintiff's second assignment of error asserts that the ALJ erred in failing to include all of Plaintiff's limitations in his hypothetical questions to the vocational expert. Specifically, Plaintiff contends that the ALJ's hypothetical questions did not account for his ability to have only "minimal" contact with coworkers and supervisors.

14

An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir.2010).

In this case, to the extent Plaintiff argues that his functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. As noted above, the ALJ properly determined that the extreme limitations found by Plaintiff's treating psychiatrists were not supported by the record and were therefore not adopted. The ALJ posed a complete hypothetical question to the VE–asking him to consider an individual with Plaintiff's age, education, work experience, and RFC–and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff is not disabled. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994) (where hypothetical accurately described the plaintiff in all relevant respects, the VE's response to the hypothetical question constitutes substantial evidence).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                            *s/Stephanie K. Bowman*
                                            Stephanie K. Bowman
                                            United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| BOBBY GILBERT, | Case No. 1:18-cv-653 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

17